Filed 3/7/13  P. v. Cross CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055055 |
| v. | (Super.Ct.Nos. BLF004863 & BLF004992) |
| DENNIS DEON CROSS, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Thomas N. Douglass, Jr., Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Renee Paradis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Andrew Mestman and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Dennis Deon Cross was charged with numerous offenses. He agreed to plead guilty to one felony charge, admit one strike prior and three prison term priors, in exchange for dismissal of the remaining counts. Pending sentencing, defendant was released on his own recognizance pursuant to a "*Cruz* waiver."[1] That is, defendant promised to appear for sentencing and agreed to an additional three years of incarceration if he did not appear as promised. Defendant failed to appear for sentencing, and became subject to the increased sentence under the *Cruz* waiver.

Now, however, defendant claims he should be allowed to withdraw his plea, asserting that a mistake in the amount of presentence custody credits he may be awarded was a material part of the plea bargain. We affirm.

FACTS AND PROCEDURAL HISTORY

The Blythe Police Department was conducting an investigation into some complaints of identity theft involving fictitious checks. By May 22, 2008, the investigating officers had focused their suspicions on defendant. Officer Scott Adams had learned that defendant was residing with his girlfriend in her apartment, so he and Corporal Heriberto Cavazos went there to conduct a parole search of defendant's residence. As the officers entered the apartment to conduct the search, defendant fled out a window.

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247, 1249.

2

The search turned up mail addressed to persons who had been victims of identity theft and a laptop computer connected to a printer, with blank checks loaded into the printer. The blank checks corresponded to other, completed checks that had been created in the names of some of the identity theft victims. The victims had not authorized checks to be written on their accounts to the payees of the completed checks. The officers also found drugs and drug paraphernalia in the master bedroom, as well as two rounds of firearm ammunition.

As a result of the investigation, and after a preliminary hearing, defendant was held to answer on charges of receiving stolen property (Pen. Code, § 496, subd. (a), counts 1, 2 & 3); possession of counterfeiting apparatus (Pen. Code, § 480, subd. (a), count 4); unlawful use of another person's information (Pen. Code, § 530.5, subd. (a), counts 5, 6 & 7, identity theft); possession of a blank check with intent to defraud (Pen. Code, § 475, subd. (b), count 8); possession of a completed check with intent to utter and defraud (Pen. Code, § 475, subd. (c), count 9); conspiracy to utter fraudulent checks (Pen. Code, §§ 182, 476, count 10); conspiracy to commit identity theft (Pen. Code, §§ 182, 530.5, count 11); possession of methamphetamine (Health & Saf. Code, § 11377, count 12); being a felon in unlawful possession of firearm ammunition (Pen. Code, § 12316, subd. (b), count 13); and possession of drug paraphernalia (Health & Saf. Code, § 11364, count 14, the sole misdemeanor charge). The amended information also alleged that defendant had suffered one prior strike conviction and four prior separate prison term convictions. In addition, the amended information alleged that defendant had suffered

3

numerous prior felony convictions for purposes of Penal Code section 1203, subdivision (e)(4).

Later, the People moved to consolidate these charges with other charges (possession of stolen property and possession of drug paraphernalia). The court granted the joinder motion.

Shortly before the date jury trial was set to begin, defendant changed his plea. He agreed to plead guilty to count 4 (possession of counterfeiting equipment, Pen. Code, § 480), and admitted his prior strike conviction, as well as three prison term priors. The plea agreement provided that defendant would be sentenced to a second-strike prison term of six years (three-year aggravated term, doubled) upon his surrender at sentencing. The remaining charges would be held open pending defendant's timely surrender. Pursuant to a *Cruz* waiver, defendant would be subjected to an additional three years' imprisonment for the prior prison terms if he did not appear as ordered for sentencing. Defendant's exposure was a minimum of six years and a maximum of nine years. The plea agreement form awarded defendant credit for pretrial custody time served of 382 actual days in custody, and 382 days of conduct credits under Penal Code sections 4019 and 2933, for a total of 764 days.

On the date of the sentencing hearing (March 11, 2010), defendant failed to appear, and a bench warrant was issued. Defendant did not appear in court again until nearly a year later, in February 2011. In August 2011, defense counsel filed a motion in the trial court to withdraw defendant's guilty plea on the ground of alleged incompetence of trial counsel: "defendant's prior trial counsel did not make any meaningful

4

investigation of the facts and merely advised defendant that his only choice was to plead guilty. Defendant was not fully advised as to the elements of the charged offenses and the available defenses. Defendant pled guilty, despite his desire to go to trial because he was told that pleading guilty was the only way he could get released to see his child that had been born while he was in custody awaiting trial." In addition, defendant asserted that, when he pleaded guilty, "he believed he would be eligible to earn good time/work time credits totaling 50% toward the completion of his sentence and this is not true as a matter of law." Defendant filed a declaration averring, to the same effect, that his attorney had not investigated the facts of the case or advised defendant of the elements required to be proven nor any defenses available. Defendant had falsely told the court that he had discussed these matters with counsel, because the attorney told defendant the only way he could get a brief release from custody was to plead guilty. Defendant claimed he was under extreme emotional distress because he had been in custody awaiting trial for over a year, and in that interval his child had been born. He had never been able to see or hold his child. Defendant also averred that he "believed that, due to a change in the law, I would be eligible to earn good time/work time credits that amounted to day for day credits toward the entire sentence. Instead, I have now learned that the maximum credits I may earn toward completion of the sentence are 20%. I would not have pled guilty if I knew the truth about my eligibility for credits."

The People opposed the motion. The prosecutor argued that defendant had failed to establish clear and convincing proof of good cause to withdraw the guilty plea. Defendant's motion amounted to a claim of ineffective assistance of counsel, but failed to

5

take account in the record of the evidence of the offenses, and the steps taken by prior counsel. The police reports and preliminary hearing testimony showed the evidence against defendant on the charged offenses. Defendant already had a lengthy criminal record, evidenced by numerous prior convictions and prison terms. Any potential testimony defendant could have offered would be subject to impeachment with these prior offenses. Crime scene photos substantiated the items of evidence found during the search, and those items closely tied defendant to the charged offenses. Prior counsel had also pursued a motion to suppress the evidence found during the parole search; the attorney was actively involved in this on-the-record assessment of the strengths and weaknesses of the prosecution's case. The record of the change-of-plea hearing showed that the trial court expressly examined defendant to determine whether he had a full opportunity to discuss the matter with his attorney and to be advised of the consequences of his plea; defendant assented on the record to both these propositions. Defendant's only evidence to contradict the record was that he lied in his responses to the court at that hearing. The People also represented that, during some of the proceedings, defendant had spoken directly to the prosecutor, with defense counsel present, seeking to persuade the prosecutor to grant probation or drug treatment; in none of these negotiations did defendant claim innocence.

The trial court denied defendant's motion to withdraw his plea. The court then proceeded to impose the nine-year sentence defendant had agreed to upon his *Cruz* waiver.

6

Defendant filed a notice of appeal specifying the ground that, "Acceptance of [the] plea was based on incorrect calculation of more credits that Defendant ended up receiving." He requested a certificate of probable cause on the ground of "ineffective assistance of counsel, failure to advise of the correct maximum sentence for charges to which pleas were entered and incorrect amount of credits I would receive and incorrect percentage of time which I was led to believe I would serve for the sentence." The trial court granted the certificate of probable cause.

## ANALYSIS

### I. Defendant Failed to Establish Good Cause to Withdraw His Plea

Defendant contends that a material provision of his plea bargain was that he would be granted "two-for-two" custody credits, because, at the time of his plea, he was expressly awarded 382 days of actual custody credit, and an equal number, 382 days, of conduct credits. After defendant failed to appear for sentencing, and he was ultimately returned for sentencing, the trial court awarded him 588 days of actual custody credit (382 days as calculated on the day of the plea bargain, plus 206 days between February 14, 2011, and the date of sentencing on September 7, 2011), plus 294 total days of presentence conduct credits. The trial court calculated the conduct credits on the basis of a six-for-four ratio in relation to the 588 days of actual custody credit (588÷4=147; 147x2=294).

Defendant complains that the 294 days of conduct credits was even less than the 382 days of conduct credits previously stated in the plea agreement. He argues that he is due, at a minimum, 88 additional days of conduct credits (382-294=88), if he is to receive

7

what he was actually awarded pursuant to his plea bargain.  He further argues that the plea bargain effectively awarded him two-for-two credits explicitly on all his presentence conduct credits, and implicitly promised the same rate of conduct credits for any time he would serve (i.e., state prison custody).

Under the terms of the law, however, defendant was statutorily ineligible for two-for-two presentence conduct credits because he had a prior strike conviction.  Defendant contends that, if the trial court is unable to fulfill the terms of the plea bargain awarding two-for-two conduct credits because such an award violates the applicable statutes, then the only remedy is to allow him to withdraw his plea.  That is, if specific performance of the bargain cannot be granted, then he must be permitted to withdraw his plea.  (*In re Williams* (2000) 83 Cal.App.4th 936, 944, 946.)

The People respond that the presentence conduct credits were not a material part of the plea bargain and resulted from trial court error that occurred after the plea agreement had been made.  The written plea agreement provided that defendant would plead guilty to a three-year aggravated term on count 4,[2] and that he would admit one strike prior and three prison term priors.  Three one-year terms would be added to defendant's prison sentence if he failed to appear at sentencing pursuant to the *Cruz* waiver.  When defendant completed and signed the change-of-plea agreement, the credits

---

[2]  At the sentencing hearing, the trial court noted that the sentence range for the pleaded offense was two, three and four years, not 16 months, two years and three years. The court imposed the agreed-upon sentence of six years, based on the middle term, not the aggravated term, doubled as a second-strike offense.

to be awarded were listed as 382 days of actual custody, 190 days of conduct credit, for a total of 572 days of credit. At the change-of-plea hearing, however, the following sequence of events took place:

First, the court recited the terms of the bargain: Defendant would plead guilty to count 4, and admit one strike and three prior prison terms. The maximum exposure on the pleaded charge was nine years. Defendant would be released from custody on a *Cruz* waiver, and if he returned at the time of sentencing, he would receive a six-year sentence. If he did not return on time, he would receive nine years. Defendant acknowledged that this was the bargain he had agreed to. No mention was made of custody credits.

Second, the court went over the meaning of the *Cruz* waiver, and specified the penalty that defendant would pay if he did not return for sentencing as ordered. Defendant stated that he understood.

Third, the trial court reviewed the rights defendant had waived and the consequences of defendant's guilty plea to a felony offense. The court also inquired whether defendant had entered into the agreement freely. Defendant stated that he had. Again, up to this point, no mention had been made of any custody credits.

Fourth, defendant pleaded guilty to count 4, and admitted the facts underlying the offense (possession of computer equipment to create blank checks). Defendant also admitted the strike prior and the three prison term priors.

Fifth, the court accepted defendant's pleas.

Sixth, the court recited again the terms of the *Cruz* waiver, and defendant's release on his own recognizance. He also took an *Arbuckle* waiver (*People v. Arbuckle* (1978)

9

22 Cal.3d 749) so that defendant could be sentenced before a different judge, at a court that was more convenient for defendant.

Seventh, the court reviewed the expected sentence that would be imposed when and if defendant appeared for sentencing on the appointed date: "If [defendant] shows up as indicated, he will be sentenced as follows: On the 480, he will be sentenced to the upper term of three years in state prison. Pursuant to the strike allegation, that will be doubled for a total of six. The 667.5(b) priors one year will be imposed but stricken. The total term . . . would be six years, and the credits, *as of today, are actually wrong. With the change in the credits, it is 382 plus 382.* Okay." (Italics added.) Obviously, it was only then that the court crossed out the figures that had been entered on the written plea form and wrote in the figure "382" for conduct credits, and "764" as the total number of credits. Up to that point, there had been no mention whatsoever of custody credits or conduct credits.

Manifestly, the award of 382 days of presentence conduct credit was never contemplated as a material part of the plea bargain. Rather, as the People contend here, that was simply a "gift," a mistake on the part of the trial court, and a matter that had never been considered in the negotiation of the plea. When defendant made his bargain, and signed the papers, the agreement recited an entirely different (and correct) amount of conduct credits and total credits.

Defendant counters that the trial court should be bound by the written plea agreement, which "clearly and explicitly specifies that [defendant] will receive 382 days of conduct credit." He argues that the plain language of the written agreement governs,

10

and no further interpretation of the agreement is necessary or permitted. (Citing *Buckley v. Terhune* (9th Cir. 2006) 441 F.3d 688, 695-697.) Defendant posits that "nothing on the face of the agreement itself" shows that it was the court, and not the district attorney, or defense counsel, or defendant himself who struck out the earlier number and wrote in "382" as the number of conduct credit days.

The parol evidence rule will exclude evidence of a prior or contemporaneous agreement that contradicts the terms of an integrated writing. (*Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1000, overruled on another point in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179.) "In applying the rule, courts employ a two-step process to determine whether (1) the writing is an integration and (2) the collateral agreement is consistent with the written agreement. [Citation.]" (*Take Me Home Rescue v. Luri* (2012) 208 Cal.App.4th 1342, 1351.) Here, the plea agreement form provided that, "All the promises made to me are written on this form, *or stated in open court.*" (Italics added.) The writing alone was expressly not a wholly integrated statement of the agreement; the agreement was intended to include other terms made express by oral statements in open court. The agreement itself contemplates that the record of proceedings in open court will be examined to determine if any terms have been changed, added, or deleted from the written plea bargain form. The examination of the record of the hearing belies defendant's facile speculation that it was a party other than the court that altered the conduct credit calculation, and that the change may have preceded defendant's guilty plea.

11

The calculation of 382 days of presentence conduct credit was not a bargained for term of the agreement. It was not a material term contemplated at the time defendant entered into the plea bargain. Rather, the alteration was a (mistaken) afterthought of the court.

Penal Code section 1018 provides, in part: "On application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." The burden of proof for such a motion lies squarely on the defendant: "The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.) Further, "The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. [Citations.] 'A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' [Citations.] 'Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.' [Citation.] [¶] To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. [Citation.]" (*Id*. at p. 1416.)

Defendant's showing here failed on both prongs of the test. Taking the prejudice claim first, defendant did aver that he would not have pleaded guilty had he known that he would not receive two-for-two conduct credits, but the trial court was not required to accept such a self-serving statement at face value. We defer to the trial court's factual findings, including its determination that defendant's claim of prejudice was not credible. As we have seen, defendant fully entered into the bargain well before anything was said or done to (mistakenly) award him two-for-two presentence custody credits. In addition, the bargain defendant received was significantly favorable without an award of two-for-two credits. In fact, at the change-of-plea hearing, the court remarked on the matter: "I don't know how you worked this out, but your maximum exposure was . . . close to 18 years the way I figured it out. Your sentence is one third of that. Typically, when you are facing that much time, the normal rule of thumb is figure out what the maximum exposure is and cut it in half, so, in my opinion, what was due to you is nine years in state prison, so you worked out a disposition for six. That was great. . . . This is a great disposition for you." Defendant's claim—that he would not have pleaded guilty had he known he would not get two-for-two conduct credits—strains credulity in the face of the number of charges and the total possible exposure he faced.

Defendant also failed to show that he was operating under any mistake, ignorance, or other factor that overcame his free judgment concerning whether to accept the plea. Again, as determined *ante*, defendant was never, as part of the plea negotiations, promised anything with respect to the earning of presentence custody credits. The

13

mistake was the trial court's, and it took place after defendant had already made his bargain and pleaded guilty.

Even if defendant might have entertained the after-the-fact notion that he was to receive two-for-two *presentence* custody credits, there is nothing whatever in the record to support the idea that he had any right or reason to believe or expect to receive an equally favorable credit ratio against his prison term. Although defendant claimed that his attorney told him he would only have to serve half his sentence, we note the complete absence from defendant's moving papers of any declaration from former trial counsel concerning the plea negotiations or any promises made to defendant.

To the extent defendant argued that he was coerced into pleading guilty because he had been in custody for a year and had not been able to see or hold his new child, the trial court clearly found the claim not credible. As the prosecutor pointed out at the hearing motion, "the argument that he was afraid that he would never see his son . . . is somewhat specious because everybody knows, especially [defendant], having been to prison before that, there was no problem with him seeing his children in a prison scenario at the visiting center, or even here at the jail he would be able to see his son."

The prosecutor further represented to the court that, contrary to defendant's representations in his declaration that he was innocent of the charges, "defendant had requested to speak to me directly," during plea negotiations, because, "I've had considerable experience and knowledge of [defendant], having prosecuted him since 2003 on numerous cases . . . ." When defendant spoke directly to the prosecutor, "the topic of the conversation wasn't that he wasn't being properly represented or that he was

14

innocent or anything like that, [it] was that . . . he wanted . . . some kind of probation deal."

None of the grounds that defendant presented to withdraw his plea were credible. Defendant did not bargain for two-for-two conduct credits as part of his plea agreement; the mistaken award of presentence conduct credits was not a material term of the plea bargain. Defendant was not eligible for two-for-two credits, for either presentence custody or prison custody. It is ludicrous to believe that defendant regarded the issue of presentence credits as a critical term, without the promise of which he would not have pleaded guilty. As the trial court pointed out, the bargain he did receive was extraordinarily favorable under the circumstances, and he had fully entered into that bargain and pleaded guilty before he received the windfall of extra presentence conduct credits.

We are mindful also that defendant failed to appear for sentencing, and did not return to California for nearly a year thereafter. After avoiding his rightful sentence for over a year, and now that he must suffer increased punishment as a consequence of failing to abide by his *Cruz* waiver, defendant's claim that the promise of custody credits was essential to the bargain rings particularly hollow. This is a classic case of buyer's remorse, now that defendant subjected himself to a nine-year rather than a six-year prison term. We are not required to permit defendant to trifle with the courts in such a fashion. The trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

15

## DISPOSITION

The trial court properly denied defendant's motion to withdraw his guilty plea.

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

CODRINGTON
J.

16