**Mario QUINTANA, Petitioner,**

v.

**Matthew L. GATE, Warden, Respondent.**

**No. CV 12–6372–MWF (AS).**

United States District Court, C.D. California.

Signed Feb. 13, 2015.

Walter K. Pyle, Walter K. Pyle Law Offices, Berkeley, CA, for Petitioner.

E. Carlos Dominguez, Office of the Attorney General, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

MICHAEL W. FITZGERALD, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. After having made a *de novo* determination of the portions of the Report and Recommendation to which Objections were directed, the Court concurs with and accepts the findings and conclusions of the Magistrate Judge.

Petitioner is serving a sentence of twenty-five years to life. Petitioner asserts that he has a right to specific performance of his plea agreement, *i.e.*, that his parole eligibility must be calculated according to the agreement, which would result in parole eligibility after 20 years instead of 25 years. (Respondent believes his parole date would then be August 2018.) More specifically, Petitioner claims that specific performance is a constitutional right clearly established in *Santobello v. New York,*

404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and therefore his claim is cognizable under AEDPA, 28 U.S.C. § 2254(d)(1). The Magistrate Judge agreed, and has issued a Report and Recommendation (Docket No. 56) (the "Report") that the First Amended Petition be granted. Respondent, filed his Objections to Report and Recommendation of United States Magistrate Judge (Docket No. 59) ("Objections"), to which Petitioner through counsel filed a Response to State's Objections to Report & Recommendations. (Docket No. 60).

The Court has carefully considered Respondent's Objections. Not surprisingly, Respondent claims that the Report substitutes. the judgment of the Ninth Circuit for that of the California courts, in that *Santobello* does not clearly establish any right applicable in Petitioner's circumstances, which require specific performance in violation of state law. (Objections at 3–5). In particular, Respondent objects to the reliance on Ninth Circuit cases. (*Id.* at 4:17 to 5:14). In addition, Respondent asserts that the Report displayed insufficient deference to the ruling of the Los Angeles Superior Court on Petitioner's state petition, which the California Supreme Court summarily affirmed. (Objections at 5–7). The superior court held an evidentiary hearing and issued a reasoned opinion that the plea agreement was violated, but that specific performance would violate California law and was therefore unavailable. (Report at 1107).

This Court and the Magistrate Judge certainly have respect for AEDPA and the superior court and Respondent's Objections are not frivolous. Nonetheless, the Objections must be overruled. The Magistrate Judge properly focused on the narrow issue presented—whether *Santobello* clearly established a constitutional right as to which the superior court made an unreasonable application. (Report at 1112–

13). On *this* issue, Ninth Circuit precedent applies to subsequent panels and to this Court. *See Marshall v. Rodgers,* ——— U.S. ———, 133 S.Ct. 1446, 1450–51, 185 L.Ed.2d 540 (2013) (an appellate panel may "look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent. . . .") Under the view *of Santobello* expressed in the cited cases, it is simply not possible to determine otherwise. *Davis v. Woodford,* 446 F.3d 957, 962 (9th Cir.2006) (enforcing agreement despite subsequent change in law); *Buckley v. Terhune,* 441 F.3d 688, 699 (9th Cir.2006) (en banc) (ordering specific performance of plea bargain even though second-degree murder did not allow that sentence); *Brown v. Poole,* 337 F.3d 1155, 1161 (9th Cir.2003) (plea induced by an unfulfillable promise is subject to challenge).

And so we come to *Sanchez v. LaMarque,* 237 Fed.Appx. 302, 303 (9th Cir. 2007), upon which the Magistrate Judge relied. (Report at 1112, 1119). Respondent fails to mention *Sanchez* in his Objections but did attempt (vainly) to distinguish the decision before the Magistrate Judge and it was noted by the superior court. *Sanchez* involved virtually identical facts to those here and an identical legal posture. (*Id.*). If it were a published decision, then there would be no question that the First Amended Petition must be granted, at least as far as a district court would be concerned. But even as an unpublished decision, it is still available to be cited. Fed. R.App. P. 32.1(a); Circuit Rule 36–3(b). And it would appear that the *Sanchez* panel viewed its decision under AEDPA as a routine application of the cited cases, which in turn applied *Santobello.*

The real objection here, and it is an important one, is that all these cases re-

flect an unfortunate habit of this Circuit of relying on its own cases instead of Supreme Court cases. *See Lopez v. Smith,* —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (criticizing the Circuit for relying on its own case law); *Deck v. Jenkins,* 768 F.3d 1015, 1031 (9th Cir.2014) (Smith, J., dissenting) ("[T]he majority commits the same error the Supreme Court has criticized our court for making time after time by collapsing the distinction between an unreasonable application of federal law and what [the majority] believes to be an incorrect or erroneous application of federal law.") (quotations omitted); *Ayala v. Wong,* 756 F.3d 656, 717 (9th Cir.2014) (Ikuta, J., dissenting from denial of rehearing en banc) ("In reaching [the conclusion that the court may review a state court decision holding that any potential federal constitutional error was harmless, de novo], the panel majority ignores the clear command of AEDPA and the Supreme Court, and creates a circuit split."), *cert. granted sub nom. Chappell v. Ayala,* —— U.S. ——, 135 S.Ct. 401, 190 L.Ed.2d 288 (2014). However, it is not for this Court to interpret *Lopez* as overruling specific Ninth Circuit cases. Whether *Lopez* overrules the cases here is a question for the Ninth Circuit or the Supreme Court.

Accordingly, the Objections are overruled, and this Court adopts the Report and Recommendation of the Magistrate Judge. In granting the First Amended Petition, the Court uses language suggested by Respondent. (Answer at 16 n. 9) (Docket No. 48). Respondent has represented that a combination of eligibility after 20 years combined with presentence custody credit of 281 days results in parole eligibility in August 2018. (*Id.*)

IT IS ORDERED that the Petition be CONDITIONALLY GRANTED. Within ninety (90) days of the entry of Judgment herein, Respondent shall release Petitioner on parole unless, within that period of time, the California Department of Corrections and Rehabilitation recalculates Petitioner's initial parole eligibility date, by permitting Petitioner to receive post-conviction credits towards his sentence, in conformity with the terms of his plea agreement and consistent with the law discussed in the Report and Recommendation.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondent.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ALKA SAGAR, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

■ On July 25, 2012, Mario Quintana ("Petitioner"), a California state prisoner represented by counsel, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") (Docket Entry No. 1). On August 13, 2012, Petitioner filed a First Amended Petition ("FAP") with an accompanying Memorandum of Points and Authorities ("Pet. Memo.") (Docket Entry

No. 7). On August 29, 2013, Respondent filed an Answer to the Petition ("Answer") (Docket Entry No. 48). On October 29, 2013, Petitioner filed a Traverse ("Traverse") (Docket Entry No. 52), and a Request for Judicial Notice of Appellee's Brief filed by the State of California in the case of *Sanchez v. LaMarque*, 237 Fed. Appx. 302 (9th Cir.2007), 2006 WL 4007444 ("*Sanchez* Brief") (Docket Entry No. 53).[1] For the reasons discussed below, it is recommended that the Petition be GRANTED.

## II.

### PRIOR PROCEEDINGS

Petitioner pleaded no contest to the discharge of a firearm with gross negligence in violation of California Penal Code ("P.C.") § 246.3, pursuant to a negotiated plea bargain, in the Los Angeles County Superior Court ("LASC") on March 29, 1999. (Lodgments 2, 4.)[2] That same day, Petitioner admitted two prior serious conviction allegations within the meaning of P.C. § 1170.12(a)-(d). (Lodgment B at 9–10, 15–16.) On May 5, 1999, Petitioner was sentenced to twenty-five years to life in state prison with the possibility of parole. (Lodgment 4.) Petitioner did not appeal his conviction. (FAP at 2.)

On June 13, 2011, Petitioner filed a habeas corpus petition in the LASC ("LASC Petition") seeking specific performance of an agreed-upon term in his plea agreement which provided that he would be eligible for parole after serving 80% of the twenty-five year term of his twenty-five years to life sentence. (Lodgment 3 at 7–8; Lodg-

ment M at 67–68.) On December 29, 2011, the LASC held an evidentiary hearing on the petition. (Lodgment M.) On January 3, 2012, the LASC issued a reasoned opinion finding that Petitioner's plea agreement had been breached, but denying habeas relief because specific performance of the plea agreement would "violate[ ] California sentencing law," specifically P.C. § 1170.12. (Lodgment K at 50, 53.)

On January 31, 2012, Petitioner filed a habeas corpus petition in the California Court of Appeal (Lodgment 5) which was summarily denied on February 9, 2012. (Lodgment 6.)

On March 16, 2012, Petitioner filed a habeas corpus petition in the California Supreme Court (Lodgment 7) which was summarily denied on June 13, 2012. (Lodgment 8.)

## III.

### PETITIONER'S CONTENTION

Petitioner contends that the State of California violated his Fourteenth Amendment right to due process when it repudiated the provision in his March 29, 1999 plea agreement mandating that Petitioner would be eligible for parole after completing 80% of his twenty-five year sentence. (FAP at 5; Pet. Memo. at 11–25.) Petitioner seeks specific performance of the terms of the plea agreement as the remedy for the breach. (Pet. Memo. at 12.)

## IV.

### STANDARD OF REVIEW

 The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

1. A Court may take judicial notice of matters of public record, including proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006); *United States ex rel. Robinson Rancheria Citizens*

*Counc. v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992). The Court GRANTS Petitioner's Request for Judicial Notice.

2. Respondent's Lodgments are labeled 1–8 (Docket Entry No. 15), Petitioner's Lodgments are labeled A–Q (Docket Entry No. 2).

applies to the instant Petition because Petitioner filed it after AEDPA's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). "By its terms [AEDPA] bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (citation omitted).

■■■ "Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision on the merits. *Greene v. Fisher*, —— U.S. ——, 132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Early v. Packer*, 537

U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■■■ Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief if the state court decision identifies the correct governing legal principle but unreasonably applies the law "to a set of facts different from those of the case in which the principle was announced." *Lockyer*, 538 U.S. at 76, 123 S.Ct. 1166 (citation omitted); *see also Woodford v. Visciotti*, 537 U.S. 19, 24–26, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495 (citation omitted).[3]

■■■ "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21, 123 S.Ct. 2527 (citation omitted); *see also Waddington v. Sarausad*, 555 U.S. 179, 190, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009) ("the decision must be not only erroneous, but objectively unreasonable" (citations and internal quotations omitted)). "Under § 2254(d), a habeas court must

---

**3.** After *Williams* was decided, "[the U.S. Supreme Court] limit[ed] federal courts' ability to extend Supreme Court rulings to new sets of facts on habeas review. [Now], courts may extend Supreme Court rulings only if it is

'beyond doubt' that the rulings apply to the new situation or set of facts." *See Moore v. Helling*, 763 F.3d 1011, 1017 (9th Cir.2014) (quoting *White v. Woodall*, —— U.S. ——, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014)).

determine what arguments or theories supported, ... or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S.Ct. at 786. This is "the only question that matters under § 2254(d)(1)." *Id.* (citation and internal quotations omitted). Habeas relief may not issue unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." *Id.; see also id.* at 786–87 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

■ Further, under AEDPA, this Court "can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue." *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000). Nevertheless, Ninth Circuit case law is relevant because it "may be persuasive authority for purposes of determining whether a particular state court decision ins an 'unreasonable application' of Supreme Court law, and also my help ... determine what law is 'clearly established.' " *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir.2000) (quoting *Duhaime*, 200 F.3d at 600–01); *see also O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998) (holding that "to the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue").

■ Here, Petitioner raised the sole contention in his federal habeas petition in the habeas petition he filed with the California Supreme Court. (Lodgment 8.) The California Supreme Court reached the merits of Petitioner's claim when it denied his habeas petition without comment or citation to authority. *See Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 1124, 179 L.Ed.2d 62 (2011) ("A spare order denying a petition without explanation or citation ordinarily ranks as a disposition on the merits."); *Richter*, 131 S.Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

■ In any event, regardless of whether the California Supreme Court's decision is on the merits, this Court "looks through" the California Supreme Court's denial to the last reasoned decision as the basis for the state Supreme Court's judgment-here, the LASC's denial of Petitioner's habeas petition. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir.2011), *cert. denied,* —— U.S. ——, 133 S.Ct. 102, 184 L.Ed.2d 233 (2012); *see also Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir.2013) ("[W]e conclude that *Richter* does not change our practice of 'looking through' summary denials to the last reasoned decision-whether those denials are on the merits or denials of discretionary review." (footnote omitted)), *as amended,* 733 F.3d 794 (9th Cir. 2013), *cert. denied,* —— U.S. ——, 134

S.Ct. 1001, 187 L.Ed.2d 863 (2014). Thus, the Court will consider the LASC's reasoned opinion addressing Petitioner's claims on the merits to determine whether the California Supreme Court's denial of Petitioner's habeas petition was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Berghuis v. Thompkins*, 560 U.S. 370, 380, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).

## V.

## DISCUSSION

### A. *Petitioner's Plea Agreement and Change of Plea*

During his change of plea hearing, Petitioner was informed, at least five times, by the judge and the prosecutor that after serving 80% of his sentence he would be eligible for parole:[4]

- The Court: ... They're giving you the minimum you can possibly get on a third strike. That's 25 years to life. At 25 years to life what that means is you have to do 80 percent of that time. So to be eligible for parole you're going to do twenty years. 80 percent of 25 years is twenty years. All right? Then you're eligible for parole. (Lodgment B at 6.)

- The Court: ... The life doesn't mean—if it was just a straight life, you'd be eligible for parole in probably seven years, but it's not. It's a third strike. It's 25 years to life. So you're not going to be eligible until you serve 80 percent of the 25.[1] Do you understand the sentencing aspect? (*Id.*)

- The Court: ... Now, if you go to trial, you get convicted of everything, I think you'll do 80 percent of 42 years. (*Id.*)

- The Court: ... You've been offered 25 to life. 25 to life means you've got to do twenty years to be eligible for parole, 80 percent. (*Id.* at 7.)

- [The Prosecutor]: ... Mr. Quintana, in exchange for your plea of no contest the People will move to dismiss the remaining counts plus all the allegations other than the strike allegations. And you'll be required to serve 25 years to life, 80 percent of that, so you'll be eligible for parole after twenty years. [1] Is that the agreement as you understand it to be? [1] The Defendant: Yes. (*Id.* at 10.)

The written plea agreement itself also specifically provided:

[Defendant] will plead guilty to 246.3 for 25 years to life in state prison—People will move to dismiss cts 1, 3, & 4 and 667(a) allegation on CT[2][.] [Defendant] will serve 80% of time.

(Lodgment 2 ¶ 14; *see also* Lodgment P (Pet'r's Decl.).)

### B. *Exhaustion*

Petitioner contends that in September 2010, he read a prison newsletter that described how, due to legislative shortcomings in the drafting of California's Three Strikes law, third strikers came to be ineligible to receive any credits to reduce their Minimum Eligible Parole Dates ("MEPD"). (Lodgment C.) Petitioner then learned, after reviewing his prison file, that he had a zero-credit earning status and that his MEPD was calculated at

---

**4.** Each of these statements was made before Petitioner entered his no contest plea. *Compare Thomas v. Lancaster Prison*, 2011 WL 6816614 at *4–5 (C.D.Cal. Nov. 17, 2011) (because the court did not discuss presen- tence credits until *after* petitioner entered his plea, he could not have relied on it in entering his plea); *Crowther v. Espinosa*, No. CV 05– 00794–AG (MAN), 2008 WL 3926862, at *10 (C.D.Cal. Aug. 26, 2008) (same).

July 30, 2023, which amounted to 100% of the twenty-five year minimum base term, rather than the agreed-upon 80%. (Lodgment D.) Petitioner contested the MEPD discrepancy through the administrative appeal process with the California Department of Corrections and Rehabilitation ("CDCR"). (FAP at 19–20.) All of his administrative appeals were denied. (*Id.*)

## C. *The Los Angeles Superior Court's Opinion*

In denying habeas relief, the LASC found that the plea agreement had been breached and that the remedies available to Petitioner were withdrawal of the plea or specific performance of the plea agreement. (Lodgment K at 50.) In its return to the LASC petition, Respondent agreed that "the ideal solution would be specific performance," but argued that this remedy was not available because the law no longer provided that a prisoner could be eligible for parole after serving 80% of the twenty-five years to life term that had been imposed in Petitioner's case. (Lodgment Q at 97.) However Respondent also contended that allowing Petitioner to withdraw his plea would be "prejudicial to *both* the People and the Petitioner. If Petitioner is allowed to withdraw his plea and go to trial, the People will have to resurrect a *13 year old case* and prepare it for trial." (*Id.*) (emphasis added).

The LASC noted that specific performance is "not a favored remedy for violation of a plea agreement," but that in any event, it was unavailable to Petitioner because the specific performance that Petitioner was seeking—"parole eligibility prior to his service of the mandatory minimum prison term dictated by statute—violates California sentencing law," specifically P.C. § 1170.12.[5] (*Id.* at 50 (citations omitted).)

The LASC also noted that there were "compelling equitable considerations" in Petitioner's favor, including "considerations that colored the analysis in *Jerry Z.*, *Brown*, and *Buckley* and which the *Sanchez* court found dispositive" but, after balancing these cases against other state cases which held that plea agreements violating statutory mandates may not be specifically enforced, the LASC determined

---

**5.** When it was adopted as part of the Three Strikes initiative in 1994, P.C. § 1170.12 permitted prisoners to receive prison conduct credits up to "one-fifth of the total term of imprisonment imposed." *In re Cervera*, 24 Cal.4th 1073, 1085, 103 Cal.Rptr.2d 762, 16 P.3d 176 (2001) (Werdegar, J. concurring) (quoting P.C. § 1170.12(a)(5)). The CDCR interpreted the Three Strikes law to authorize a defendant with three strikes to be awarded conduct credits subject only to the specified limitation of one-fifth of the total term. *Cervera*, 24 Cal.4th at 1076, 103 Cal.Rptr.2d 762, 16 P.3d 176; *Madrid v. Trimble*, No. EDCV 12–0962 PSG (SS), 2013 WL 5951971, at *5 (C.D.Cal. Nov. 6, 2013). In 1997, the CDCR implemented a "zero credit rule" after the California Court of Appeals interpreted the Three Strikes law to allow such credits only against any qualifying *determinate* term of imprisonment. *People v. Stofle*, 45 Cal.App.4th 417, 420–21, 52 Cal.Rptr.2d 829 (1996); *Cerv-*era, 24 Cal.4th at 1076, 103 Cal.Rptr.2d 762, 16 P.3d 176. In *Cervera*, the California Supreme Court, noting that it needed to "settle an important issue," considered for the first time whether the Three Strikes law authorized a defendant with three strikes to be awarded prison conduct credits for use against a mandatory *indeterminate* term of life imprisonment and held that postconviction conduct credits did not apply to the *indeterminate* sentences of third strike defendants. *Id.* at 1076, 103 Cal.Rptr.2d 762, 16 P.3d 176.

Respondent concedes that the state of the law was unsettled at the time of Petitioner March 1999 plea agreement and that "it was not until 2001," two years after Petitioner entered his plea, "that the California Supreme Court clarified," in *Cervera*, that Petitioner's indeterminate three strike sentence did not qualify for the post conviction conduct credits that he had been promised as part of his plea agreement. (Answer at 11 n. 5.)

that "specific performance is not an option." (Lodgment K at 50, 52, 53.)

This does not leave Petitioner with no remedy. Petitioner has the option of withdrawing his plea and requiring the People to prove their case against him, *13 years after the alleged offense.* After conferring with his counsel, however, Petitioner at the evidentiary hearing explicitly elected not to pursue this remedy. The Court will honor his choice. (*Id.* at 53 (emphasis added).) The LASC denied the habeas petition. (*Id.*)

### D. *Analysis*

#### 1. *Petitioner's Plea Agreement Was Breached*

 "California courts are required to construe and interpret plea agreements in accordance with state contract law." *Buckley v. Terhune,* 441 F.3d 688, 695 (9th Cir.2006) (en banc). Under California law, the Court first looks to the plain meaning of the agreement's language. *Id.* (citing Cal. Civ.Code §§ 1638, 1644). If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* (quoting Cal. Civ.Code § 1649). If any ambiguity remains, the language should be interpreted most strongly against the party who caused the uncertainty to exist. *Id.* at 695–96 (citing *People v. Toscano,* 124 Cal.App.4th 340, 345, 20 Cal.Rptr.3d 923 (2004) ("ambiguities [in a plea agreement] are construed in favor of the defendant")).

In this case there is no ambiguity in the language of the plea agreement or in the plea colloquy. The prosecutor and the judge "clearly communicated" to Petitioner numerous times that he would be eligible for parole after serving 80% of his twenty-five year minimum term. *See Sanchez v. LaMarque,* 237 Fed.Appx. 302, 303 (9th Cir.2007). After an evidentiary hearing, the LASC determined that the agreement had been breached, and Respondent concedes that point. (Answer at 12 n. 6 ("The superior court also appears to have correctly found that the plea agreement was breached.") (citation omitted).)

#### 2. *Available Remedy*

This Court must determine whether, under AEDPA, in light of the state's breach of Petitioner's plea agreement and the circumstances of this case, the LASC's finding that specific performance was not an available remedy to Petitioner was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Respondent argues that because there is no clearly established Supreme Court precedent "requiring specific performance of a plea agreement when doing so would violate state law," the LASC's rejection of Petitioner's habeas claim could not have been contrary to, or an unreasonable application of, such precedent. (Answer at 7.) The Court disagrees.

 "[D]ue process rights conferred by the federal constitution allow [a defendant] to enforce the terms of [his] plea agreement." *Brown v. Poole,* 337 F.3d 1155, 1159 (9th Cir.2003). It is axiomatic that when a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Mabry v. Johnson,* 467 U.S. 504, 509–10, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (clarifying that a *Santobello* claim requires the plea to be induced by the prosecutor's promise); *see also Davis v. Woodford,* 446 F.3d 957, 961 (9th Cir.2006) (when a prosecutor adds a term to the

agreement during the plea colloquy, that term becomes a part of the agreement regardless of the parties' prior understanding); *Brown,* 337 F.3d at 1159. The determination of the defendant's "rights and responsibilities under the plea agreement is controlled by the principles of *fundamental fairness* imposed by the Due Process Clause." *Santobello,* 404 U.S. 257 at 262–62, 92 S.Ct. 495 (emphasis added). "Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to 'repair the harm caused by the breach.'" *Buckley,* 441 F.3d at 699 (quoting *Toscano,* 124 Cal.App.4th at 345, 20 Cal.Rptr.3d 923 (citing *People v. Kaanehe,* 19 Cal.3d 1, 14, 136 Cal.Rptr. 409, 559 P.2d 1028 (1977))). *Santobello* provides that depending on the circumstances of the case, specific performance and withdrawal of the plea are both available remedies for breach. *Santobello,* 404 U.S. at 263, 92 S.Ct. 495.

Thus, the relevant inquiry is not whether *the Supreme Court* has required specific performance of a breached plea agreement when doing so would violate state law, but rather, whether, under the circumstances of this case, the LASC's refusal to specifically enforce the terms of Petitioner's plea agreement was contrary to, or an unreasonable application of Supreme Court authority, or was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, in violation of Petitioner's due process rights.

As Respondent correctly notes, in determining whether habeas relief is warranted, this Court must consider whether the state court's decision was "'consistent with a proper application of state contract law in interpreting the plea agreement' and if not, find 'the decision was an 'unreasonable application' of clearly established federal law.'" Answer at 12 (citing *Davis,* 446 F.3d at 962.) The Court's determination

of this issue may be guided by decisions other than those of the United States Supreme Court. *LaJoie v. Thompson,* 217 F.3d 663, 669 n. 6 (9th Cir.2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir.2000). As set forth below, Ninth Circuit cases, along with other federal and state authorities, including California cases, in accordance with the principles of equity and fundamental fairness prescribed by *Santobello,* have ordered specific performance of the terms of a breached plea agreement even when the enforced term did not conform to state statutes or other authority.

3. *The State Court Unreasonably Applied Clearly Established Federal Law In Refusing To Grant Petitioner Specific Performance Of His Breached Plea Agreement*

After the LASC determined that Petitioner's plea agreement had been breached by the State, it offered Petitioner an opportunity to withdraw his plea. Petitioner, who had been incarcerated for more than twelve years at the time of the evidentiary hearing, declined the offer. (Lodgment K at 53.) The LASC declined to specifically enforce the agreement finding that, under California law, "plea agreements that violate statutory mandates may not be specifically enforced." (*Id.* at 50–51 (citing *People v. Kim,* 193 Cal.App.4th 1355, 1362, 122 Cal.Rptr.3d 832 (2011), *People v. McClellan,* 6 Cal.4th 367, 380, 24 Cal.Rptr.2d 739, 862 P.2d 739 (1993), *People v. Renfro,* 125 Cal.App.4th 223, 233, 22 Cal.Rptr.3d 680 (2004), and *People v. Walker,* 54 Cal.3d 1013, 1027, 1 Cal.Rptr.2d 902, 819 P.2d 861 (1991), *overruled on other grounds by People v. Villalobos,* 54 Cal.4th 177, 182–83, 141 Cal.Rptr.3d 491, 277 P.3d 179 (2012))).

However, the LASC's reliance on these decisions for the proposition that under

California law "plea agreements that violate statutory mandates may not be specifically enforced," is misplaced and not "consistent with a proper application of state contract law" in determining the remedies for a breach of a plea agreement when one of the promised terms is unlawful. Accordingly, the Court finds the LASC's decision to deny relief to be an unreasonable application of clearly established federal law.

### a. State Court Decisions

In *People v. Kim*, 193 Cal.App.4th 1355, 1358, 122 Cal.Rptr.3d 832 (2011), the California Court of Appeal found that the trial court violated the defendant's plea agreement when it sentenced him to more than one life term even though the parties had agreed that he would be sentenced to only one life term. However, the court determined that the remedy of specific performance was problematic because (1) to the extent the trial court may have been exercising its sentencing discretion when it imposed the additional terms, ordering the trial court to impose the specific sentence the parties had agreed to might "*bind[ ] the trial judge to a disposition that he or she considers unsuitable*" under all the circumstances;" and (2) the agreed-upon sentence would violate state sentencing laws because defendant had also admitted an enhancement that triggered a *mandatory* consecutive twenty-five years to life sentence. *Id.* at 1362–63, 122 Cal.Rptr.3d 832. Thus, the court declined to order

specific performance of the plea agreement because doing so would require the court of appeal or the trial court to now *modify the judgment* by eliminating the enhancement in order to impose a sentence that was authorized by law.[6] *Id.* at 1363, 122 Cal.Rptr.3d 832.

In *People v. Walker*, 54 Cal.3d 1013, 1027, 1 Cal.Rptr.2d 902, 819 P.2d 861 (1991), *overruled on other grounds by People v. Villalobos*, 54 Cal.4th 177, 182–83, 141 Cal.Rptr.3d 491, 277 P.3d 179 (2012), the trial court ordered defendant to pay a fine even though the plea agreement did not contemplate the imposition of a fine at sentencing. The fine was mandatory under state law unless the court stated compelling and extraordinary reasons to waive the fine (which it did not do). The California Supreme Court held that, in order to specifically enforce the plea agreement, it would have to strike the fine imposed by the trial court at sentencing and that doing so, *after the fact* would "violate th[e] statutory mandate" that the fine is mandatory unless specifically waived by the court. *Walker*, 54 Cal.3d at 1027, 1 Cal.Rptr.2d 902, 819 P.2d 861. However, the court determined that simply reducing the fine to the statutory minimum of $100 would not violate the mandatory nature of the fine, and would also not constitute "a punishment significantly greater than that bargained for" under the plea bargain—a form of "substantial specific performance." *Id.*

---

**6.** The court also held that under California law, "substantial specific performance" was an additional remedy for breach. *Kim*, 193 Cal.App.4th at 1363–64, 122 Cal.Rptr.3d 832 (2011). That remedy involves entering a judgment that, while deviating somewhat from the parties agreement, does not impose a punishment significantly greater than that bargained for. *Id.* at 1362 (citing *People v. Walker*, 54 Cal.3d 1013, 1027, 1 Cal.Rptr.2d 902, 819 P.2d 861 (1991), *overruled on other grounds by People v. Villalobos*, 54 Cal.4th

177, 182–83, 141 Cal.Rptr.3d 491, 277 P.3d 179 (2012)).

Under *Santobello*, the test for whether a punishment greater than that bargained for is "significant," is stricter than the "prejudice" test and, even where a punishment is not prejudicial and would not have caused the defendant to not plead guilty, that same punishment "may, well be 'significant' if imposed after a negotiated plea." *Walker*, 54 Cal.3d at 1028, 1 Cal.Rptr.2d 902, 819 P.2d 861.

This case is easily distinguishable from *Kim* and *Walker*. Here, specific performance of the plea agreement—awarding good conduct credits towards Petitioner's 25–years to life sentence—would not bind the sentencing judge to a disposition that would be "unsuitable under all the circumstances" or require an after-the fact modification of the already imposed sentence because the sentencing court itself *understood* this provision to be part of the plea agreement and the sentence that it imposed. Unlike *Kim* and *Walker*, specific performance in this case would merely serve to enforce the provision of the plea bargain agreed to by Petitioner, the prosecutor, *and the court.*

The LASC's reliance on *People v. McClellan*, 6 Cal.4th 367, 24 Cal.Rptr.2d 739, 862 P.2d 739 (1993), and *People v. Renfro*, 125 Cal.App.4th 223, 22 Cal. Rptr.3d 680 (2004) is also misplaced. In *McClellan*, the California Supreme Court held that, although the trial court erred in failing to advise the defendant that his guilty plea would result in his having to register as a sex offender, defendant was not entitled to withdraw his plea because he had failed to object to the imposition of the registration requirement at sentencing, failed to establish that he would not have pleaded guilty if he had been advised of the mandatory registration requirement for sex offenders, and *failed to establish that the registration requirement violated the plea agreement or was a subject of plea negotiation. McClellan*, 6 Cal.4th at 370, 24 Cal.Rptr.2d 739, 862 P.2d 739 (emphasis added). The court also held that the mandatory sex offender registration requirement was not a "permissible subject of plea negotiation." *Id.* at 380, 24 Cal.Rptr.2d 739, 862 P.2d 739. Similarly, in *Renfro*, the California Court of Appeal found that it could not enforce a plea agreement provision declaring that defendant's attack against hospital personnel would not later be used as a qualifying offense for a subsequent commitment as a mentally disordered offender because such a provision was *not subject to negotiation* in a plea agreement and beyond the authority of the sentencing court. *Renfro*, 125 Cal.App.4th at 228, 22 Cal.Rptr.3d 680 (emphasis added).

This case is also distinguishable from *McClellan* and *Renfro*. Unlike *McClellan*, in which the challenged sentencing condition was not even a part of the plea agreement or subject to plea negotiation, the trial court and prosecutor in this case explicitly promised Petitioner that he would be eligible for parole after serving 80% of his sentence and, as the LASC acknowledged in its decision, Petitioner's decision to plead guilty rested to a significant degree on that promise. (Lodgment K at 50 ("Petitioner voiced his concerns about how long he would spend in prison; the minimum prison term of 20 years prior to parole eligibility was thereafter repeated several times during the plea colloquy; and Petitioner now faces a 25 year minimum prison term prior to parole eligibility.")). Unlike *Renfro*, in which the challenged provision was not subject to plea negotiation and beyond the sentencing court's authority, the sentencing provision at issue in this case—good conduct time credits applied to an indeterminate sentence—was not, at the time of the plea, a prohibited subject of plea negotiation or beyond the authority of the sentencing court.[7]

The LASC's opinion also mentioned the recent California case of *People v. Jerry Z.*, as "consistent with the unbroken line of California precedent that prohibits a prosecutor from entering into a plea agreement that violates statutory law." (Lodgment K at 52 (citing *Jerry Z.*, 133 Cal.Rptr.3d 696

7. *See* note 5 *supra*.

(2011), *review granted by* 139 Cal.Rptr.3d 1, 272 P.3d 975 (2012),[8] *and review dismissed, cause remanded by* 167 Cal. Rptr.3d 107, 316 P.3d 1217).) In *Jerry Z.,* the plea agreement specifically provided that following successful completion of probation and ten years of crime-free living, the government would consent to the expungement of defendant's conviction and to the termination of his status as a sex offender registrant. *Jerry Z.,* 133 Cal. Rptr.3d at 700. Although the agreement was lawful at the time it was made, subsequent changes to the law barred expungement and the lifting of the registration requirement. *Id.* The court stated that if there was an *"express* agreement by the prosecutor and court ... the state was obligated to keep its promise so long as the plea rested 'in any significant degree' on the promise...." *Id.* at 712 (citing *Santobello,* 404 U.S. at 262, 92 S.Ct. 495). Finding that the District Attorney had *promised* the relief at issue as part of the plea agreement, and that defendant had

relied upon, and was induced by, the promise to plead guilty, the California Court of Appeal remanded the case to the trial court with instructions to grant the relief requested even though doing so "will require a technical violation" of the relevant California statute, noting that "[t]he court in *Arata* did not hesitate to grant immediate relief ... despite any technical violation of the statute." *Id.* at 720–21.

The LASC distinguished *Jerry Z.,* on the grounds that it involved a later *change* to the law that existed at the time of the agreement. (Lodgment K at 52.) The instant case is analogous. The California law on whether inmates sentenced to indeterminate sentences pursuant to the Three Strikes law qualified for postconviction credits was not "settled" until several years *after* Petitioner entered his plea. *See* note 5, *supra.* There is no question that Petitioner relied upon the promise that he would be entitled to post-conviction credits up to twenty percent of his 25 years to life sentence in deciding to plead

**8.** Review was granted and further action deferred in *Jerry Z.* pending the disposition of a related issue in *Doe v. Harris,* 57 Cal.4th 64, 158 Cal.Rptr.3d 290, 302 P.3d 598 (2013) which was decided on July 1, 2013. In *Doe,* the California Supreme Court, in response to a certified question from the Ninth Circuit, held that "a plea agreement's reference to a statutory consequence attending a conviction ... does not give rise to an *implied* promise that the defendant, by pleading guilty or nolo contendere, will be unaffected by a change in the law." *Id.* at 73, 158 Cal.Rptr.3d 290, 302 P.3d 598. The plea agreement in *Doe* required defendant to register as a sex offender and the law in effect at the time the plea was entered provided that a registrant's identity would not be available for public inspection. The law subsequently changed ("Megan's Law") to specifically and expressly mandate public notification provisions which " 'are applicable to every person ... without regard to when his ... crimes were committed or his ... duty to register ... arose ...' " *Id.* at 67– 68, 158 Cal.Rptr.3d 290, 302 P.3d 598. In holding that the public notification provisions

were retroactive and applicable to Doe's conviction, the court noted that "neither the parties plea negotiations, nor the change of plea form, nor the plea agreement considered or addressed the possibility" of the impact of future legislation on the registration requirement. *Id.* at 68, 158 Cal.Rptr.3d 290, 302 P.3d 598. The court distinguished *People v. Arata,* 151 Cal.App.4th 778, 60 Cal.Rptr.3d 160 (2007), (defendant was entitled to specific performance of a plea agreement provision providing for the expungement of his conviction after he successfully completed probation, even though the law was subsequently amended to make expungement unavailable for the offense in question), finding that "circumstances [in *Arata*] established that the *promise* of expungement *was a part of the parties' understanding* and had provided a *significant inducement* for the plea," and noting that there was no such promise or inducement in *Doe. Doe,* 57 Cal.4th at 73, 158 Cal. Rptr.3d 290, 302 P.3d 598 (emphasis added). The *Doe* decision did not change the holdings in *Jerry Z.,* or *Arata.*

guilty and the promise of parole eligibility based upon those credits was a significant inducement for his plea. The Court finds this case to be indistinguishable from *Jerry Z.*

Thus, the Court finds that the case authority relied on by the LASC does not support its finding that, under California law, specific performance was *unavailable* as a remedy because specific enforcement of the plea agreement would violate California sentencing law. Accordingly, the Court finds that the LASC's decision to deny specific performance to Petitioner was not "consistent with a proper application of state contract law in interpreting the plea agreement" and, therefore, involved an unreasonable application of clearly established federal law. *Davis*, 446 F.3d at 962. As set forth below, a review of the relevant federal authority also confirms that the LASC's decision is not entitled to AEDPA deference.

### b. Federal Cases

Ninth Circuit cases interpreting *Santobello* have upheld specific performance of an agreed-upon sentence, even when that sentence is otherwise improper under California law, where it would be fundamentally unfair pursuant to *Santobello* to do otherwise.

In *Brown v. Poole*, 337 F.3d 1155 (9th Cir.2003), the Ninth Circuit granted defendant specific performance of the prosecutor's promise at sentencing that, although defendant was being sentenced to fifteen years in prison, "if you behave yourself at the state prison, . . . you are going to get out in half the time." *Brown*, 337 F.3d at 1158. The court rejected the state's contention that the prosecutor had no authority to make such a promise binding prison authorities, finding that, "[t]his [lack of authority] may be a problem for the state, but not for Brown." *Id.* at 1161 (quoting *United States v. Anderson*, 970 F.2d 602, 607 (9th Cir.1992) ("A plea induced by an

unfulfillable promise is no less subject to challenge than one induced by a valid general promise which the government simply fails to fulfill.")). The court also observed that the defendant "had no reason to know that the prosecutor's promises were improper." *Id.* As the Supreme Court stated in *Santobello*, "[t]hat the breach of agreement was inadvertent does not lessen its impact." *Santobello*, 404 U.S. at 262, 92 S.Ct. 495. The court also found that defendant Brown had kept her end of the bargain, comporting herself as a model prisoner during her incarceration. *Brown*, 337 F.3d at 1161. She had, therefore, "paid in a coin that the state cannot refund," and rescission of the contract would be impossible under the circumstances. *Id.* Accordingly, the court held, pursuant to *Santobello*, that fundamental fairness dictated specific performance as the only "viable remedy" and ordered the defendant, who had served more than seventeen years in prison without disciplinary infractions, to be immediately released. *Id.* at 1161–62 (citing *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185, 187 (7th Cir. 1977) (per curiam) (since defendant "has substantially begun performing his side of the bargain, it would not be fair to vacate the plea and require him to go through the procedure anew. Fundamental fairness can be had by limiting his term of custody to that portion of the sentence which comports with the bargain made"); and *Carter v. McCarthy*, 806 F.2d 1373, 1377 (9th Cir.1986) (affirming district court order releasing the petitioner from any charges relating to a parole term that was mandatory under California law, but which had not been communicated to the petitioner when he entered his guilty plea, and stating that "had the district court failed to act as it did, Carter might well have completed service of his illegal sentence before he received the relief to which he was entitled.")).

In *Buckley v. Terhune*, 441 F.3d 688, 699 (9th Cir.2006) (en banc), the defendant entered into a plea agreement believing he was being sentenced to a maximum of fifteen years in prison for second degree murder but was subsequently sentenced to a prison term of fifteen years to life, the mandatory term for the offense. *Buckley*, 441 F.3d at 691–93. After noting the ambiguities in the agreement,[9] the Ninth Circuit construed the agreement in favor of the defendant and affirmed the district court's finding that the agreement had been breached and that specific performance was the only viable remedy because the defendant had already fulfilled his obligations under the plea agreement, including testifying against his co-defendants, and serving his bargained-for sentence of fifteen years.[10] *Id.* In granting habeas relief, the Ninth Circuit noted that it had arrived at its decision "*notwithstanding the state's argument that a determinate fifteen year prison term is not a lawful sentence for second degree murder.*" *Id.* at 699 (emphasis added). It also noted that, "[c]onsistent or not with the state's sentencing statute, that is the bargain that California made in 1987. Buckley has fulfilled his promises and it is now too late for the state to argue that it was not in a position to offer him a fifteen year sentence in exchange."[11] *Id.* (citing *Brown*, 337 F.3d at 1161).

In *Davis v. Woodford*, 446 F.3d 957 (9th Cir.2006), the petitioner challenged the State's use of his 1986 conviction for eight separate robberies to support a Three Strikes sentence imposed in 2000 after he was convicted of being a felon in possession of a firearm and evading a peace officer. Petitioner contended that the State had expressly agreed, in his 1986 plea agreement, to treat the robbery convictions as only one "strike" for purposes of later recidivist sentencing. *Id.*, 446 F.3d at 958–59. The Ninth Circuit held that the State had violated the terms of the 1986 plea agreement and granted habeas relief, finding that "the state must live with the particular bargain that it made," *Id.* at 963, and that "[i]mplicit in the California Supreme Court's denial of Petitioner's *Santobello* claim are an unreasonable finding of fact and an unreasonable application of clearly established Supreme Court law." *Id.* at 962.[12] Although the Ninth Circuit was referring to the

9. At the time defendant signed the agreement, it stated that he would be sentenced to a maximum of fifteen years. After the agreement was signed, the district attorney added a provision which stated that at the time of sentencing "the people will move the court to declare the murder to be murder in the second degree, *with a maximum term of 15 years to life.*" *Buckley*, 441 F.3d at 691–92.

10. At the time that the district court granted habeas relief, defendant Buckley had not yet served the full fifteen years of his sentence. *See Buckley v. Terhune*, 266 F.Supp.2d 1124, 1144 (C.D.Cal.2002).

11. The court declined to express a view on the "proper remedy ... in a case with other facts" *Buckley*, 441 F.3d at 699 n. 11, noting that the appropriate remedy "depends on the nature of the breach, which party ... has breached the agreement, ... which party seeks enforcement of the contract ... and 'what has transpired since the agreement was made.' " *Id.* (citing *Kaanehe*, 19 Cal.3d at 13, 136 Cal.Rptr. 409, 559 P.2d 1028).

12. The court distinguished the California case of *People v. Gipson*, 117 Cal.App.4th 1065, 1070, 12 Cal.Rptr.3d 478 (2004) (holding that plea bargains are "deemed to incorporate and contemplate not only existing law but the reserve power of the state to amend the law or enact additional laws,"), on the ground that the plea agreement in *Davis* did not "merely incorporate existing law by reference; rather, it included a *specific promise* about how many prior convictions would be placed in Petitioner's criminal record as a result of the guilty plea." *Davis*, 446 F.3d at 962 (emphasis added).

California Supreme Court's denial of Davis' claim that his agreement had been breached, its reasoning is equally applicable to the LASC's legal finding here that specific performance is not an available remedy.[13]

The Ninth Circuit's unpublished decision in *Sanchez v. LaMarque*, 237 Fed.Appx. 302 (9th Cir.2007) involves facts that are virtually identical to this case. *See* note 1 *supra*. In *Sanchez*, the petitioner was sentenced in 1999 to twenty-five years to life pursuant to a plea agreement. During the plea colloquy, the prosecutor and judge told Sanchez that he would be entitled to good time and work time credits such that he could potentially be eligible for parole after serving only 80% of his twenty-five year minimum sentence. *Sanchez*, 237 Fed.Appx. at 303. After Sanchez began serving his sentence, the Warden advised him that he was not eligible for any sentence credits and would have to serve his full minimum term of twenty-five years before becoming eligible for parole. *Id.;* (*see also Sanchez* Brief at 9 n. 2, 15 (citing *Cervera*, 24 Cal.4th at 1073, 103 Cal. Rptr.2d 762, 16 P.3d 176) (the Three Strikes law did not authorize or allow conduct credits for use against a mandatory indeterminate term of life imprisonment).). The Ninth Circuit found that Sanchez' agreement had been breached and that under the circumstances of the case, specific performance was the "appropriate and equitable remedy." *Id.* Accordingly, the court "reverse[d] the district court and remand[ed] with instructions to grant the habeas petition and direct specific enforcement of the terms of the agreement" and ordered that "Sanchez shall be eligible for good time and work time credits and, if warranted based on those credits, be enti-

tled to parole eligibility after serving twenty years of his sentence." *Id.*

The same result is warranted in this case where the promise of parole eligibility based upon good conduct credits was made multiple times by the judge and prosecutor at Petitioner's plea hearing, was part of the plea agreement and clearly provided an inducement for Petitioner to plead guilty. *Compare Sanchez* Brief at 8–9 (after telling Sanchez at the plea hearing that there was no good time/work time credit, the court conferred with defense counsel and the District Attorney and conceded that he had "misspoke," and that defense counsel "and the D.A. agreed" that Sanchez only had to serve 80% of his sentence) *with* Lodgment K at 50 (emphasis added) (the minimum prison term of 20 years prior to parole eligibility was repeated *"several times"* during the plea colloquy). Moreover, the Petitioner has served a substantial amount of his sentence at this time (over fifteen years) than the approximately eight years served by Sanchez at the time his habeas petition was granted.

Although the LASC acknowledged that the Ninth Circuit's decision in *Sanchez* involved facts that were similar to Petitioner's case, (Lodgment K at 51), it attempted to distinguish the decision on the grounds that *Sanchez* "did not discuss or otherwise confront the issue that awarding 20% credits violated pertinent California sentencing laws and thereby undercut the mandatory minimum sentence mandated by statute." (Lodgment K at 51.) However, this issue was briefed by the parties (*see Sanchez* Brief at 9 & n. 2, 15–16; *see also Sanchez*, Appellant's Reply Brief, 2007 WL 708248). Therefore, this Court assumes that the Ninth Circuit implicitly rejected this argument or did not find it persuasive. The LASC also attempted to discount the rul-

**13.** *Womack v. Kane*, No. Civ. S–05–1159 FCD GGH P, 2006 WL 3349524, at *5 (E.D.Cal. 2006) (finding that the issue of remedy "is as legal an issue entitled to AEDPA deference as is the initial issue of whether the plea was breached.").

ing in *Sanchez* by stating that, as an unpublished opinion, *Sanchez* was "merely persuasive authority at odds with binding precedent." (Lodgment K at 52 (citing *Renfro*, 125 Cal.App.4th at 233, 22 Cal. Rptr.3d 680).) The Court disagrees. As set forth above, Ninth Circuit cases involving *Santobello* claims, including *Sanchez*, are persuasive and, contrary to the LASC's assertion, not "at odds" with California precedent, especially because the California cases that the LASC relied upon do not support the LASC's finding that specific performance was not an available remedy in this case.

The LASC also attempted to distinguish *Brown* and *Buckley* on the ground that the petitioners in those matters, unlike Petitioner here, had already served the minimum sentences under their plea agreements such that granting specific performance of their agreements did not "undercut the mandatory minimum." (Lodgment K at 51; *see also* Answer at 15.) Indeed, Respondent argues that the *Brown* and *Buckley* decisions implicitly find that a defendant should receive the remedy of specific performance "only when all other remedies are foreclosed" and that, unlike *Brown* and *Buckley*, Petitioner still has a remedy available to him—he can withdraw his plea and require the People to prove their case against him. (Answer at 15.) The Court does not agree.

There is nothing in *Santobello*, or in the authority interpreting *Santobello*, that would force Petitioner or this Court under the circumstances here to make such a "Hobson's choice," even if this would result in the enforcement of an otherwise "unlawful" provision under California state law. *See, e.g., Arata*, 151 Cal.App.4th at 789, 60 Cal.Rptr.3d 160 (granting immediate relief

under P.C. § 1203.4 despite any technical violation of the statute); *Jerry Z.*, 133 Cal.Rptr.3d at 720 (same). Nor is there any authority mandating that one remedy is only available when the other is foreclosed. *See, e.g., Buckley*, 441 F.3d at 699 n. 11 ("in a case in which the state has already received the benefit of the bargain, the harm caused by the breach is generally best repaired by specific performance of the plea agreement, although a defendant may, if he so chooses, elect instead to rescind the agreement and take his chances from there."); *Dyer v. Rosario*, No. 2:04–cv–0484 JAM JEM P, 2008 WL 2415377, at *2 (E.D.Cal. June 12, 2008) (noting that both specific performance and withdrawal of the plea were available and ordering specific performance because petitioner declined to withdraw his plea and the purpose of the remedy is to repair the harm); *Sanchez*, 237 Fed.Appx. at 303 (citing *Brown*, 337 F.3d at 1161) (although both remedies are available, under the circumstances of the case, specific performance is appropriate and equitable); *Carter*, 806 F.2d at 1377 (although both remedies available, leave to withdraw the plea would be of no benefit to Carter).

Additionally, although the petitioners in *Buckley*[14] and *Brown* had completed their minimum terms, making specific performance the only *viable* option (not the only *available* option), there is no authority holding that specific performance is only a viable option in those circumstances. "We express no view on what the proper remedy would be in a case with other facts." *Buckley*, 441 F.3d at 699 n. 11.

The overarching question in light of the breach of the plea agreement is one of fundamental fairness, including consideration of whether a petitioner has "substantially performed" his part of the bargain.[15]

---

**14.** As previously noted, at the time the district court ordered specific performance, defendant Buckley had not served his fifteen year term. *See supra* note 11.

**15.** *Cf. Womack*, 2006 WL 3349524, at *5 (even if *Buckley* and *Brown* could be con-

In *Ferris*, the appellant had entered into a plea in 1974 for a sentence "of from five to ten years." *Ferris*, 551 F.2d at 186. He asked at the plea hearing about mandatory parole and was told (incorrectly) that if he served the full ten years of his sentence, there would be no mandatory parole following that term. *Id.* Although Ferris had been incarcerated for approximately three years of the five-to-ten year sentence at the time the decision was published in 1977, the appellees argued that it was "too early" to find prejudice or that due process notions of fundamental fairness had been violated. *Id.* Ordering specific performance of the agreement, the court disagreed:

> The mere fact that appellant faces an additional five year parole term with its attendant restrictions, which he did not agree to, is sufficient prejudice.... [1] Since Ferris has substantially begun performing his side of the bargain, *it would not be fair to vacate the plea and require him to go through the procedure anew.* Fundamental fairness can be had by limiting his term of custody to that portion of the sentence which comports with the bargain made.

*Id.* at 187 (emphasis added). In *Sanchez*, the petitioner entered into his plea agreement in 1999 and the Ninth Circuit's 2007 decision ordering specific performance of his agreement was only eight years later—well prior to Sanchez' twenty-five year minimum sentence. In this case, Petitioner has also served a "substantial portion" of his sentence, having been sentenced in 1999 to a 25 years to life sentence. If he is entitled to and granted good conduct and work credits as promised in his plea agreement, he could be eligible for parole in the next five years. Despite the LASC's and Respondent's suggestion that withdrawing his plea now, or even four years ago, is a viable option, the facts and circumstances of this case and fundamental fairness dictate otherwise. The appropriate remedy in this case is to order specific performance of the plea agreement.[16]

### E. *Conclusion.*

■ "Federal habeas courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" *Sanchez*, 237 Fed.Appx. at 303 (citation and internal quotation marks omitted).

■ Here, Petitioner was explicitly promised that he would be eligible for parole after serving 80% of his twenty-five year to life term. Petitioner relied on that promise in entering his guilty plea and the promise was an inducement for his decision to plead guilty. Petitioner has substantially performed his side of the agreement, having been incarcerated for fifteen years as a model prisoner. In short, he has "paid in a coin that the state cannot refund" and to require him to withdraw his plea and "go through the procedure anew" would be fundamentally unfair. Under these circumstances, specific performance is the only viable remedy that can repair

strued as AEDPA authority on the "required" remedy in the event of a plea breach, Womack had not served a "substantial portion" of his ten-year sentence, having served less than two years).

16. The Court also notes that, like *Brown*, Petitioner has been a model prisoner during his incarceration. (*See, e.g.,* Lodgment M at 73 (counsel stated that Petitioner had been told at the time of his plea "that if he behaved himself, if he did well in prison that he would be eligible for parole at 80% of his time. In furtherance of that instruction by the court, he has worked for early release")); FAP at 12 n. 2 (explaining that Petitioner has been a model prisoner and not received any disciplinary infractions since incarceration, has received several commendations, and has consistently worked to rehabilitate himself through education and self-help groups).

the harm caused by the state's breach of the agreement.

Moreover, *Santobello* requires the state to fulfill its promise made to induce a plea. Cases interpreting *Santobello*—the Ninth Circuit decisions in *Brown, Buckley, Davis,* and *Sanchez,* as well as the state court decisions in *Jerry Z.,* and *Arata*—involved plea agreements that did not conform to state sentencing law, either at the time they were made or at some later time. Yet, each of these cases, pursuant to *Santobello* or cases relying on *Santobello,* granted habeas relief and ordered specific performance of the agreed-upon plea agreement term even though such enforcement violated state law. Contrary to the LASC's decision, California law does not foreclose enforcing an agreement that technically violates California law under the circumstances present in this case.

Based on the foregoing, the Court finds that the California court's determination that specific performance was unavailable to Petitioner, under the circumstances of this case, was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, and also amounted to an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Habeas relief is therefore warranted on this claim.

## VI.

### RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) conditionally granting the habeas petition and ordering Petitioner to be released within ninety days from the entry of judgment unless the California Department of Corrections and Rehabilitation recalculates Petitioner's initial parole eligibility date in accordance with the terms of his plea agreement by making Petitioner eligible for good time and work credits;[17] and (3) directing that Judgment be entered granting the Petition.

Filed Oct. 3, 2014.

---

**17.** Respondent states that because Petitioner received 281 days of presentence custody credit when he was sentenced on May 5, 1999, "it would appear that he should be eligible for parole in August 2018. (Answer at 16 n. 9.) Respondent submits that if the Court finds specific performance available and "is inclined to grant relief," it may "conditionally grant the habeas petition and order Petitioner to be released within 90 days from entry of judgment unless prison officials recalculate his initial parole eligibility date such that he is considered for parole in August 2018." (*Id.*)